UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSE MANRIQUE, suing individually on his own behalf and representatively on behalf of a class of plaintiffs similarly situated,

                Plaintiff,

            v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

                Defendant.

No. 21-CV-224 (KMK)

<u>OPINION & ORDER</u>

---

<u>Appearances</u>:

Kevin Fitzpatrick, Esq.
Dirk Marschhausen, Esq.
Marschhausen & Fitzpatrick, P.C.
Hicksville, NY
*Counsel for Plaintiff*

John K. Weston, Esq.
Sacks Weston LLC
Philadelphia, PA
*Counsel for Plaintiff*

Brian L. Bank, Esq.
Evan H. Krinick, Esq.
Rivkin Radler LLP
Uniondale, NY
*Counsel for Defendants*

Douglas W. Dunham, Esq.
Ellen P. Quackenbos, Esq.
Dechert LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Jose Manrique ("Plaintiff") brings a putative class action lawsuit against State Farm Mutual Automobile Insurance Company ("Defendant"), seeking damages as well as declaratory and injunctive relief for Defendant's alleged violations of the New York Insurance Law and New York General Business Law as well as breach of contract with respect to automobile insurance policies Defendant issued.  (*See generally* Compl. (Dkt. No. 6).)  Before the Court is Defendant's Motion To Dismiss the Complaint (the "Motion"), filed pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Not. of Mot. (Dkt. No. 22).)  For the following reasons, the Motion is denied in part and granted in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and are assumed true for the purpose of resolving the instant Motion.

On July 31, 2019, Plaintiff was a passenger in a motor vehicle belonging to Suzanne S. Carlson ("Carlson"), whose vehicle was covered under a motor vehicle insurance policy issued by Defendant.  (Compl. ¶ 13.)  Carlson's policy, number 2488-728-52A, provides "Basic and Optional No-Fault Personal Injury Protection Benefits pursuant to" applicable New York State law.  (*Id.*)  "Basics" and "Optional" benefits provide coverage of $50,000 and $25,000, respectively, totaling $75,000 of coverage.  (*Id.* ¶ 17.)

While riding in Carlson's motor vehicle, Plaintiff was injured in an automobile accident.  (*Id.* ¶ 14.)  Plaintiff subsequently applied to Defendant for First Party Benefits under claim number 52-9868-R52.  (*Id.*)

At the time of the accident, Plaintiff had an actual monthly wage of $3,424.99. (*Id.* ¶ 15.) Pursuant to Carlson's policy, Defendant paid Plaintiff $49,214.90 in medical benefits and $14,444.08 in wage benefits over a five-month period. (*Id.* ¶ 16.) Additionally, Plaintiff received $4,420.00 in New York State Disability benefits and $2,648 in Social Security benefits, which Defendant credited. (*Id.*) All told, Plaintiff received $70,726.98 in First Party Benefits. (*Id.*)

B. Procedural Background

On January 14, 2021, Plaintiff filed his Complaint. (Dkt. No. 6.) On March 12, 2021, Defendant submitted a pre-motion letter in anticipation of his forthcoming motion to dismiss the Complaint, (Dkt. No. 8), to which Plaintiff responded on April 21, 2021, (Dkt. No. 12). Plaintiff then sent a follow-up letter on June 11, 2021 with supplemental authority. (Dkt. No. 15.)

The Court held a pre-motion conference on July 14, 2021 and set a briefing schedule. (Dkt. No. 18.) Defendant filed the Motion on August 18, 2021. (Not. of Mot.; Decl. of Brian L. Bank in Supp. of Mot. To Dismiss (Dkt. No. 23); Def.'s Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s Mem.") (Dkt. No. 24).) Plaintiff subsequently filed his Memorandum of Law in Opposition to the Motion on September 22, 2021. (*See* Pl.'s Mem. of Law in Opp'n to Mot. To Dismiss ("Pl.'s Mem.") (Dkt. No. 26).) Defendant filed its Reply on October 6, 2021. (*See* Def.'s Mem. of Law in Further Supp. of Mot. To Dismiss ("Def.'s Reply Mem.") (Dkt. No. 27).)

II. Discussion

A. Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot.*

4

*Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

    B.  Analysis

        1.  New York Insurance Law

"New York enacted the Comprehensive Automobile Insurance Reparations Act . . . to 'ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence [and] to reduce the burden on the courts[.]'" *Gov't Emps. Ins. Co. v. Lexington Med. Diagnostic Servs., P.C.*, No. 18-CV-2990, 2020 WL 1316644, at *3 (E.D.N.Y. Mar. 20, 2020) (alterations in original) (quoting *Med. Soc'y v. Serio*, 800 N.E.2d 728, 731 (N.Y. 2003)).  The law, known otherwise as the No-Fault Statute, *see Pryce v. Progressive Corp.*, No. 19-CV-1467, 2019 WL 8163424, at *1 (E.D.N.Y. Nov. 15, 2019), and the regulations promulgated thereunder, require automobile insurance companies to provide insureds with coverage of up to $50,000 in so-called "Basic Economic Loss," *see* N.Y. Ins. Law § 5102(a); N.Y. Comp. Codes R. & Regs. tit. 11, § 65-1.1; *see also Lanzillotta v. GEICO Emps. Ins. Co.*, No. 19-CV-1465, Dkt. No. 23, at 5 (E.D.N.Y. Sept. 30, 2020).  This requirement grows to $75,000 "if Optional Basic Economic Loss . . . coverage is purchased." N.Y. Comp. Codes R. & Regs., tit. 11, § 65-1.1.

"Basic Economic Loss" includes "(1) [a]ll necessary expenses incurred for" medical care and professional health services as well as "(2) [l]oss of earnings from work which the person

would have performed had he not been injured." N.Y. Ins. Law §§ 5102(a)(1)–(2). The earnings portion of Basic Economic Loss is limited by statute to "two thousand dollars per month for not more than three years from the date of the accident causing the injury." *Id.* § 5102(a)(2).

The coverage insurers must provide is distinct from the amount insurers pay out to insureds. This latter figure, called "First Party Benefits," is calculated by deducting from Basic Economic Loss: (1) 20% of lost earnings, and (2) any government disability benefits received as a result of the accident precipitating an insurance payout. *See id.* § 5102(b)(1)–(2); N.Y. Comp. Codes R. & Regs., tit. 11, § 65-1.1.

The Parties dispute when the $2,000 per month cap applies. Said otherwise, the Court must determine "whether an insurer may apply the 20 percent deduction for lost earnings against the . . . Basic Economic Loss when calculating First Party Benefits for an individual who, prior to her accident, earned over $2,000.00 per month." *Lanzillotta*, No. 19-CV-1465, Dkt. No. 23, at 6.

Plaintiff contends that because the statute's text limits First Party Benefits for the sake of lost wages to $2,000 per month, if an insured earns more than $2,000 per month, the statute does not allow an insurer to simultaneously place the cap on lost earnings while crediting more than that amount as Basic Economic Loss. (*See* Pl.'s Mem. 5–11.) Succinctly, Plaintiff argues that, pursuant to the statutory scheme, "because Plaintiff's wages exceeded $2,000 per month, Defendant was capped at crediting Plaintiff's no-fault coverage at $2,000." (Pl.'s Mem. 10.)

Defendant, on the other hand, contends that the statute's text affords insurers the right to apply a 20% deduction to Basic Economic Loss in addition to capping lost wages. (*See* Def.'s Mem. 10–14; Def.'s Reply Mem. 5–9.) In practice, this means that insurance companies such as

Defendant can count 20% of an insured's wages above $2,000 against the Basic Economic Loss limit without needing to reimburse the insured for the amount deducted above $2,000.

The New York Court of Appeals ("Court of Appeals") first interpreted the No-Fault Statute's wage cap in the context of insurance coverage and reimbursements in *Kurcsics v. Merchants Mutual Insurance Co.*, 403 N.E.2d 159 (N.Y. 1980).[1]  *See Lanzillotta*, No. 19-CV-01465, Dkt. No. 23, at 6.  In that case, Kurcsics was struck by a third party insured by Merchants Mutual Insurance Co. while riding a motorcycle. *Kurcsics*, 403 N.E.2d at 161.  Kurcsics submitted documentation proving he earned $1,400 per month at the time of the accident, but Merchants Mutual only paid Kurcsics $800 per month, having deducted 20% from the then-$1,000 maximum.  *See id.*  Kurcsics argued that it was improper for Merchants Mutual to have deducted 20% from his capped wages while crediting the full capped amount against his Basic Economic Loss, meaning he was entitled to recover the full $1,000 statutory maximum.  *Id.*

The Court of Appeals sided with Kurcsics, holding that "an individual is entitled to actual lost earnings claimed less 20%, unless such reduced figure exceeds $1,000 per month, in which case such person would be entitled to a maximum of $1,000 due to the outer net limit imposed [by the No-Fault Statute]."  *Id.* 162.  The Court of Appeals went further:

> [The Basic Economic Loss provision] provides that one of the components of basic economic loss is loss of earnings from work and further states, in unequivocal terms, that this amount shall not exceed one thousand dollars per month for not more than three years from the date of the accident causing the injury.  Thus, it is abundantly clear that this provision contemplates recovery for loss of earnings up to $1,000 per month, and we would be remiss in reading the 20% deduction embodied in [the First Party Benefits provision] as rewriting [the Basic Economic Loss provision] to limit the maximum recovery to $800 per month for loss of earnings.

---

[1] When *Kurcsics* was decided, the statutory scheme was identical, but the cap on lost earnings was set at $1,000 per month.  *See Pryce*, 2019 WL 8163424, at *2.

*Id.* at 162–63 (quotation marks omitted).

Notwithstanding this clear holding, Defendant now asserts that *Kurcsics* actually stands for the opposite proposition. Specifically, Defendant maintains that "the New York Court of Appeals concluded in *Kurcsics* that the . . . maximum does not apply in the computation of lost wages for purposes of Basic Economic Loss, but instead limits the amount paid out for lost wages as First Party Benefits." (Def.'s Mem. 11; *see also id.* at 10–14; Def.'s Reply Mem. 1–5.) To substantiate its view, Defendant points to the holdings in *Normile v. Allstate Insurance Company*, 448 N.Y.S.2d 907 (3d Dep't. 1982), *aff'd*, 459 N.E.2d 843 (N.Y. 1983), and its progeny. (*See* Def.'s Mem. 16–17; Def.'s Reply Mem. 4 n.1.) Defendant also points to the dissent in *Normile*, which Defendant believes embodies Plaintiff's position in this action and thus "underscores" that *Normile* favors the Defendant's reading of *Kurcsics*. (Def.'s Mem. 16–17.)

Two federal courts—both in the Eastern District of New York—have already analyzed this question, and both have concluded that Plaintiff's reading of the statute is correct: "The No-Fault Statute does not operate to let [insurers] benefit twice, once by limiting [an insured's] lost wages benefits to $2,000 per month and again by permitting [the insurer] to offset $500 per month from [an insured's] maximum First Party Benefits." *Pryce*, 2019 WL 8163424, at *3; *see also Lanzillotta*, No. 19-CV-01465, Dkt. No. 23, at 6–9. This Court joins the Eastern District's consensus, finding Defendant's interpretation of *Kurcsics* wanting.

In *Kurcsics*, the Court of Appeals plainly dismissed Defendant's reading of provision:

In our opinion, the language of [the No-Fault Statute] . . . which defines lost earnings, to wit: 'loss of earnings from work which the injured person would have performed had he not been injured, and reasonable and necessary expenses incurred by such person in obtaining services in lieu of those that he would have performed for income'. The . . . limitation embodied in [the No-Fault Statute] is not part and

8

> parcel of the definition of lost earnings but, merely, represents *the outer limit of recovery* set down by the Legislature in the no-fault automobile insurance scheme.

49 N.Y.2d at 163 (emphasis added). This language nullifies Defendant's interpretation, as the Defendant's reading of the framework would place an effective ceiling on the recovery of lost wages equal to 80% of the statutory maximum of lost wages. Were that the case, the statutory "limitation" on lost wages could not "represent[] the outer limit of recovery." *Id.*

Defendant points specifically to Footnote 3 in *Kurcsics* as proof that "the $2,000 maximum does not apply to the amount of lost earnings to be attributed to the $50,000/$75,000 limit on Basic Economic Loss under section 5102(a)." (Def.'s Mem. 12; *see also id.* at 11–12.) In full, the *Kurcsics* footnote reads:

> To recover the maximum of $1,000 per month, a claimant would be required to demonstrate that he or she suffered loss of earnings . . . in the amount of $1,250 or more. This is so because the 20% deduction would operate so as to reduce the gross loss of earnings claimed. If, for example, an injured person claims $1,100 in lost earnings, the 20% deduction works to reduce the amount recoverable to $880 ($1,100 minus [.20 x $1,100]).

49 N.Y.2d at 163 n.3. Unfortunately, this footnote cannot carry Defendant's water. The Court of Appeals' explanation speaks only to how a claimant can receive the maximum of lost wages as First Party Benefits, "simply illustrat[ing] that after making the required calculations [under today's increased limits], all individuals who claim less than $2,500 in monthly lost wages will receive 80% of their claimed lost monthly wages as benefits, and all who claim $2,500 or more will receive the statutory maximum." *Pryce*, 2019 WL 8163424, at *3.

Defendant's position also fails to withstand scrutiny when considering the legislature's ability to draft the scheme Defendant envisions. If the Legislature wanted to permit insurance companies to credit wages against the Basic Economic Loss beyond those capped by First Party Benefits, it knew what language would effectuate that intent. *See Colgrove v. Battin*, 413 U.S.

9

149, 163 (1973) ("If Congress had meant to . . . legislate common-law features . . . 'it knew how to use express language to that effect.'" (quoting *Williams v. Florida*, 399 U.S. 78, 97 (1970))); *see also NLRB v. Canning*, 573 U.S. 513, 600 (2014) (Scalia, J., concurring) ("If the [legislature] had thought [to enact a given scheme], they would have known how to do so."). Indeed, the Court of Appeals in *Kurcsics* made this very point:

> If the Legislature had so intended, [the Basic Economic Loss provision] would limit recovery to $800 per month and not authorize, as it presently does, recovery up to one thousand dollars per month for loss of earnings. The 20% deduction should not be treated as taking away what benefits [the Basic Economic Loss provision] bestows for it remains a basic principle of statutory construction that a court will not by implication read into a clause of a rule or statute a limitation for which no sound reason can be found and which would render the clause futile.

49 N.Y.2d at 163. The Legislature could have specifically authorized the deduction of wages in the Basic Economic Loss beyond those capped in First Party Benefits. That the Legislature chose not to do so demonstrates that Defendant's reading of the provision extends beyond the statute's terms.

Finally, the Court's conclusion is bolstered by the Legislature's refusal to rewrite the framework following either the Court of Appeals' ruling in *Kurcsics* or the two recent Eastern District rulings, *Pryce* and *Lanzillotta*. As the Supreme Court has observed, "[t]he long time failure of [the legislature] to alter [a law] after it had been judicially construed, and the enactment by [the legislature] of legislation which implicitly recognizes the judicial construction as effective, is persuasive of legislative recognition that the judicial construction is the correct one." *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 488 (1940); *see also Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 594 (2004) ("[Legislative] silence after years of judicial interpretation supports adherence to the traditional view."); *Normile*, 448 N.Y.S.2d at 908–09 ("This court's interpretation is bolstered by the fact that it is consistent with the established

practice and regulations of the Superintendent of Insurance. The Legislature did not attempt to clarify the provision in 1977 and we must assume that they were aware of such practice and regulations." (citations omitted)). "[The Legislature's] failure to amend the statute provides some indication that the courts had correctly discerned legislative intent." *United States v. Cook*, 76 F.3d 596, 601 (4th Cir. 1996).

This canon of construction is even more persuasive when a legislative body re-enacts the statute without substantively modifying the provision. *See Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change"). Here, not only has the Legislature chosen to leave the scheme substantively undisturbed following *Kurcsics*, but it did so despite having modified the scheme in other small ways—e.g., increasing the wage cap and adding language regarding consideration of statutory or contractual benefits. *Compare* Comprehensive Automobile Insurance Reparations Act, Ch. 13 § 671 (1973) *with* N.Y. Ins. Law § 5702 (observing near-identical language save for a modification in statutory cap). This again buttresses the Court's conclusion.

Defendant's citations to *Normile* and other New York state court decisions, (*see* Def.'s Mem. 16–17; Def.'s Reply Mem 4 n.1), are of no avail. As the Appellate Division, Third Department made plain in *Normile*, "[t]he basic question presented [was] whether the *statutory setoffs* enumerated in [the No-Fault Statute] are to be deducted from [B]asic [E]conomic [L]oss . . . or whether *the setoffs* are to be deducted from actual economic loss." 488 N.Y.S.2d at 908 (emphases added). That question is not before the Court here, as there are no "statutory setoffs" at issue. *See* N.Y. Ins. Law § 5102(b)(2) (offsetting "social security disability benefits, or workers' compensation benefits, or disability benefits . . . or medicare benefits" from First Party

11

Benefits). Thus, Defendant's reliance on that case and subsequent precedent is "misplaced." *Lanzillotta*, No. 19-CV-1465, Dkt. No. 23, at 8.

Accordingly, the Court finds that Plaintiff has pled a plausible violation of New York Insurance Law § 5102, and Defendant's Motion with respect to Count I is denied.

### 2. Breach of Contract

Plaintiff alleges that Defendant breached its contract for the insurance policy at issue because the policy failed to comply with the No-Fault Statute. (*See* Compl. ¶¶ 26–30.) "Under New York law, the elements of a cause of action for breach of contract are (1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach." *Beautiful Jewellers Priv. Ltd. v. Tiffany & Co.*, 438 F. App'x 20, 21–22 (2d Cir. 2011) (citing *First Invs. Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998)). Importantly, New York law mandates that insurance contracts be read to include all "[e]xisting and valid statutory provisions [that] are applicable, . . . becom[ing] a part of the contract as much as if they were actually incorporated therein[.]" *Sec. Mut. Life Ins. Co. of N.Y. v. Rodriguez*, 880 N.Y.S.2d 619, 622–23 (1st Dep't. 2009) (citation omitted); *see also Trizzano v. Allstate Ins. Co.*, 780 N.Y.S.2d 147, 179 (2d Dep't. 2004) ("Applicable provisions of the Insurance Law are 'deemed to [be] part of [an] insurance contract as though written into it'" (alterations in original) (quoting *Salzman v Prudential Ins. Co.*, 72 N.E.2d 891, 892 (N.Y. 1947))). Therefore, assuming a contract for an insurance policy and exists and was paid for, the policy's failure to comply with the No-Fault Statue would constitute a breach.

There is no dispute that a contract existed and that the policy owner performed, i.e., paid the requisite premiums. Given the Court's conclusion above that Plaintiff adequately pled a violation of the New York Insurance Law and his corresponding monetary injury, Plaintiff

12

adequately pleads breach of contract. Thus, Defendant's Motion with respect to Count II is also denied.

### 3. New York General Business Law

Plaintiff alleges that Defendant violated New York General Business Law § 349, which bars "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] state." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (quoting N.Y. Gen. Bus. Law § 349(a)). Specifically, Plaintiff alleges that Defendant misrepresented the insurance plan's compliance with applicable insurance law as well as the payouts or reimbursements to be issued pursuant to the policy. (*See* Compl. ¶¶ 31–36.)

"To state a claim [under § 349], a plaintiff must allege (1) that the defendant's acts were consumer oriented, (2) that the acts or practices are 'deceptive or misleading in a material way,' and (3) that the plaintiff has been injured as a result." *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995)); *accord Nick's Garage*, 875 F.2d at 124 (same).

Regarding the first prong, the Court of Appeals has "inferred from the statute's structure and legislative history that § 349 was . . . limited" to "conduct directed at consumers," *James v. Penguin Grp. (USA) Inc.*, No. 13-CV-2801, 2014 WL 1407697, at *9 (S.D.N.Y. Apr.11, 2014) (citing *Oswego Laborers' Local 214*, 647 N.E.2d at 744), meaning "acts or practices [that] have a broader impact on consumers at large," *Oswego Laborers' Local 214*, 647 N.E.2d at 744. This consumer-focused framing has been found to disqualify claims arising from "'[p]rivate contract disputes[] unique to the parties,'" *James*, 2014 WL 1407697, at *9 (quoting *Oswego Laborers'*

13

*Local 214*, 647 N.E.2d at 744). Conversely, the Court of Appeals has upheld a § 349 claim arising from "an extensive marketing scheme" put on by insurance companies wherein advertising for insurance policies deceived consumers. *See Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 603 (N.Y. 1999). Because Plaintiff's claim arises from Defendant's representations about a boilerplate consumer contract broadly available to the public, the Court concludes that Defendant's actions are sufficiently "consumer oriented" to satisfy the first prong. *Goldemberg*, 8 F. Supp. 3d at 478.

The Court finds that Plaintiff's claim also satisfies the second prong. In the context of § 349 claims, "'[d]eceptive acts' are defined objectively[] as acts 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). Plaintiff can plausibly claim that Defendant's insurance policy misled a reasonable consumer, such as Carlson, by believing that the policy complied with applicable state insurance laws and that she (or her passengers) would have received the appropriate payout pursuant to state law in exchange for the premiums demanded and paid.

Plaintiff's § 349 claim falls apart on the third prong, however. The third prong is itself comprised of two elements: that an injury occurred, and that the injury was the result of the deception. With regard to the former, "a monetary loss is a sufficient injury to satisfy the requirement under § 349." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). Because Plaintiff plausibly alleges an injury—the additional insurance money to which he was entitled— Plaintiff meets this mark.

The latter requirement proves problematic for Plaintiff. In a § 349 action, because the deception must cause the injury, one's "loss must be independent of the loss caused by the

14

alleged breach of contract." *Id*. That is not the case here; the injury is the breach of contract itself, thereby sinking Plaintiff's claim. *See Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 305 (S.D.N.Y. 2012) (holding that the plaintiff had failed to allege injury under § 349 because the purported damages "stem[med] from the alleged breach of contract"). Put another way, there is no harm beyond that redressed by the breach of contract claim. Although "New York courts apply the statute broadly," *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 476 (E.D.N.Y. 2009) (citing *Karlin v. IVF Am., Inc.*, 712, N.E.2d 662, 665 (N.Y. 1999)), no amount of leniency can cure Plaintiff's deficiency in this regard. Having failed to allege a unique injury caused by Defendant's allegedly deceptive representations, Plaintiff cannot state a claim under New York General Business Law § 349, and Defendant's Motion To Dismiss with respect to Count III is granted.

### 4. Declaratory and Injunctive Relief

Lastly, Plaintiff seeks "a preliminary and permanent injunction and order, enjoining and restraining the Defendant . . . from reducing Basic Economic Loss coverage for wages by more than the two thousand dollars per month" as well as "declaratory judgment and order declaring the obligations of the Defendant . . . regarding the reduction of Basic Economic Loss coverage." (Compl. ¶¶ 40, 41.) "Declaratory judgments and injunctions are remedies, not causes of action." *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406–07 (S.D.N.Y. 2010) (collecting cases). For that reason, as well as the other reasons stated herein, Defendant's Motion is granted with respect to Count IV for both declaratory and injunctive relief.

#### i. Declaratory Relief

"[A] request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights." *In re Joint E. & S. Dist. Asbestos Litig.*,

14 F.3d 726, 731 (2d Cir. 1993). Nonetheless, the question of "[w]hether to exercise declaratory jurisdiction is within the district court's broad discretion," *Chiste*, 756 F. Supp. 2d at 407, Though such relief is improper where it "will serve 'no useful purpose,'" *Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 302 (S.D.N.Y. 2012) (quoting *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010)) (collecting cases). Because Defendant's compliance with the No-Fault statute will be adjudicated via Counts I and II, independent declaratory relief serves no purpose here. *See DiGangi v. Gov't Emps. Ins. Co.*, No. 13-CV-5627, 2014 WL 3644004, at *8 (E.D.N.Y. July 22, 2014) ("The [c]ourt declines to issue a declaratory judgment, since doing so would not finalize the controversy between the parties, clarify the legal issues involved, or serve any other useful purpose." (citing *N.Y. Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006))). Therefore, Count IV is dismissed with respect to declaratory relief.

### ii. Injunctive Relief

To the extent Plaintiff states a separate claim for an injunction, that is dismissed, as an "[i]njunction is not a separate cause of action; it is a remedy." *Chiste*, 756 F. Supp. 2d at 407 (citations omitted). Accordingly, Count IV is dismissed with respect to injunctive relief.

Nonetheless, Plaintiff's would not meet the requirements for that remedy. Injunctive relief is only appropriate when a litigant has established "a likelihood of success on the merits of [his] case" and "a likelihood of irreparable harm if the requested relief is denied." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 152–53 (2d Cir. 2007) (citing *Coca–Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 314–15 (2d Cir. 1982), *abrogated on other grounds by* Fed. R. Civ. P. 52(a)). Although the inquiry features two factors, "[c]ourts have long recognized that irreparable harm is the sine qua non of a preliminary injunction." *REDF Organic Recovery,*

*LLC v. Kafin*, No. 12-CV-7973, 2012 WL 5844191, at *2 (S.D.N.Y. Nov. 19, 2012) (italics omitted).  Thus, to warrant injunctive relief, one "must present sufficient proof to provide a reasonable basis for believing that the injury is real and imminent."  *Id.*

Plaintiff has not shown that he and similarly situated persons are "likely to encounter future harm of the kind that makes injunctive relief appropriate."  *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020).  Plaintiff does not aver that the harms are ongoing, nor does he suggest that absent an immediate modification in Defendant's practices, other similarly situated persons could also not be compensated.[2]  Moreover, to the extent such harms exist, they are not irreparable.  *See Regeneron Pharms., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 510 F. Supp. 3d 29, 39 (S.D.N.Y. 2020) ("'Monetary loss alone will generally not amount to irreparable harm . . . unless the movant provides evidence of damage that cannot be rectified by financial compensation.'" (ellipsis in original) (quoting *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991))); *Oracle Real Est. Holdings I LLC v. Adrian Holdings Co. I, LLC*, 582 F. Supp. 2d 616, 625 (S.D.N.Y. 2008) ("'If an injury can be appropriately compensated by an award of monetary damages, then an adequate remedy at law exists, and no irreparable injury may be found to justify specific relief.'" (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004))).

---

[2] Plaintiff does not respond to Defendant's arguments that "Plaintiff cannot establish that denying such relief would result in irreparable harm," (Def.'s Mem. 25 (quotation marks omitted)); rather, Plaintiff's arguments on this topic speak solely to declaratory relief, (*see* Pl.'s Mem. 23–24 (failing to discuss injunctive relief)).  Plaintiff's failure to respond to Defendant's argument to this point favors granting the Motion on this claim.  *See Lopez Canas v. Whitaker*, No. 19-CV-6031, 2019 WL 2287789, at *6 (W.D.N.Y. May 29, 2019) ("It is well settled in this Circuit that 'a plaintiff effectively concedes a defendant's arguments by his failure to respond to them'" (alteration omitted) (quoting *Felske v. Hirschmann*, 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012))).  Nevertheless, the Court decides this question on its merits.

Absent a showing that future irreparable harms will come to pass without judicial intervention, Plaintiff is, at best, seeking injunctive relief to redress past alleged harms. This is not permitted. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) ("Although past injuries may provide a basis to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way."). At bottom, Plaintiff has not demonstrated the need to deploy "one of the most drastic tools in the arsenal of judicial remedies." *Hanson Tr. PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985).

### III. Conclusion

For the foregoing reasons, Defendant's Motion To Dismiss is denied with respect to Counts I and II and granted with respect to Counts III and IV. The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt. No. 22.) The Court will hold a Status Conference on January 10, 2022, at 11:30 a.m.

SO ORDERED.

Dated:   December 2, 2021
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge