# UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF NEW YORK

JOSE MANRIQUE, suing individually on his
own behalf and representatively on behalf of a
class of plaintiffs similarly situated,

              Plaintiff,

    v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

              Defendant,

Civil Action No:
7-21-cv-0224-KMK

**DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO CERTIFY AN INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ....................................................................................................II

INTRODUCTION .................................................................................................................1

BACKGROUND ...................................................................................................................3

ARGUMENT ........................................................................................................................6

     I.      THE COURT'S ORDER PRESENTS A CONTROLLING QUESTION OF LAW .....................................................................................................................6

     II.     THERE ARE SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION AS TO THE CONTROLLING QUESTION OF LAW PRESENTED BY THIS CASE ..............................................................................8

          A. Conflicting Authority Demonstrates a Substantial Ground for Difference of Opinion on the Controlling Issue of Law in This Case .....................................8

          B. The New York Court of Appeals' Decision in *Kurcsics* Creates Genuine Doubt as to the Correctness of This Court's Decision..........................................13

     III.    IMMEDIATE APPEAL COULD MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THIS LITIGATION ....................................16

     IV.    THE EXCEPTIONAL CIRCUMSTANCES OF THIS CASE WARRANT INTERLOCUTORY REVIEW ..........................................................................18

CONCLUSION....................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Balanca v. GEICO General Insurance Co.*,
  13 Misc. 3d 90 (Appellate Term, N.Y. 2d Dep't 2006)..........................................................11

*Capitol Records, LLC v. Vimeo, LLC*,
  972 F. Supp. 2d 537 (S.D.N.Y. 2013)..............................................................................12, 18

*Caul v. Petco Animal Supplies, Inc.*,
  2021 WL 4407856 (E.D.N.Y. Sept. 27, 2021) ........................................................................13

*Chen-Oster v. Goldman*,
  2017 U.S. Dist. LEXIS 106406 (S.D.N.Y. June 14, 2017)........................................................2

*Corey v. USAA General Insurance Co.*
  2011/800111, Decision and Order at 1 (N.Y. Sup. Ct. Aug. 10, 2012)...................................11

*Davarci v. Uber Technologies, Inc.*,
  2021 WL 5326412 (S.D.N.Y. Nov. 15, 2021) ........................................................................12

*Heitner v. Government Empls. Ins. Co.*,
  64 N.Y.2d 834 (1984) ................................................................................................................9

*In re Actos End-Payor Antitrust Litig.*,
  2020 WL 433710 (S.D.N.Y. Jan. 28, 2020), *aff'd sub nom., United Food &
  Com. Workers Local 1776 v. Takeda Pharm. Co.*, 11 F.4th 118 (2d Cir. 2021) .....7, 17, 18, 19

*In re Facebook, Inc., IPO Secs. & Derivative Litig.*,
  986 F. Supp. 2d 524 (S.D.N.Y. 2014)..............................................................................8, 12

*Jones v. Midland Funding, LLC*,
  2012 WL 1204716 (D. Conn. Apr. 11, 2012) ........................................................................17

*Kinkead v. Humana, Inc.*,
  2016 WL 9453808 (D. Conn. Oct. 13, 2016) .....................................................................3, 17

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In
  Amministrazione Straordinaria*,
  921 F.2d 21 (2d Cir. 1990)......................................................................................................2, 7

*Kurcsics v. Merchants Mutual Insurance Co.*,
  49 N.Y.2d 451 (1980) ...................................................................................... *passim*

# TABLE OF AUTHORITIES

continued

**Page(s)**

*Lanzillotta v. GEICO Emp. Ins. Co.*,
2020 U.S. Dist. LEXIS 183536 (E.D.N.Y. Sept. 30, 2020)................................................2, 12

*Marks v. Nationwide Mutual Ins. Co.*,
228 A.D.2d 937 (N.Y. 3d Dep't 1996) ...........................................................................8, 10

*McDonnell Douglas Fin. Corp. v. Penn Power & Light Co.*,
849 F.2d 761 (2d Cir. 1988)..................................................................................................6

*Normile v. Allstate Insurance Co.*,
87 A.D.2d 721 (N.Y. 3d Dep't 1982), *aff'd for reasons stated below*, 60
N.Y.2d 1003 (1983) ................................................................................................................9

*Pryce v. Progressive Corp.*,
2019 WL 8163424 (E.D.N.Y. Nov. 15, 2019)................................................................2, 12

*United States ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*,
521 F. Supp. 3d 265 (E.D.N.Y. 2021) ................................................................................18

*Roberts v. Tishman Speyer Properties, L.P.*,
62 A.D.3d 71 (N.Y. 1st Dep't), *aff'd*, 13 N.Y.3d 270 (2009)..................................................7

*Rothstein v. GMAC Mortg., LLC*,
2014 WL 1329132 (S.D.N.Y. Apr. 3, 2014)................................................................3, 16, 17

*Sanchez v. United States*,
696 F.2d 213 (2d Cir. 1982)..................................................................................................9

*Skubis v. Nationwide Property & Casualty Insurance Co.*,
303 A.D.2d 984 (N.Y. 4th Dep't 2003) ...............................................................................8, 9

*Sleepy's LLC v. Select Comfort Wholesale Corp.*,
909 F.3d 519 (2d Cir. 2018) ...............................................................................................13

*Tantaros v. Fox News Network, LLC*,
465 F. Supp. 3d 385 (S.D.N.Y. 2020), *aff'd*, 12 F.4th 135 (2d Cir. 2021).....................7, 8, 16

*V.S. v. Muhammad*,
595 F.3d 426 (2d Cir. 2010)................................................................................................13

*Vidal v. Nielsen*,
2018 WL 10127043 (E.D.N.Y. Apr. 30, 2018) ...................................................................16

iii

# TABLE OF AUTHORITIES

continued

**Page(s)**

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................ *passim*

N.Y. Ins. Law § 5102(a)(2) .................................................................................. 14

N.Y. Ins. Law § 5104(a)(2) .................................................................................. 4

N.Y. Ins. Law § 5102(b) ...................................................................................... 6, 14

N.Y. Ins. Law § 5102(b)(1) ................................................................................. 14, 15

New York's No-Fault Law § 5102(a)(1)-(4) ......................................................... 4

New York's No-Fault Law §5102(a)(5) ............................................................... 4

## INTRODUCTION

Defendant State Farm Mutual Automobile Insurance Company ("State Farm") respectfully submits this memorandum of law in support of its motion seeking amendment of the Court's December 2, 2021, Opinion and Order (ECF No. 28) (the "Order"), so as to permit interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  The Order denied in part and granted in part State Farm's motion to dismiss.  State Farm seeks certification of that portion of the Order denying State Farm's motion to dismiss Plaintiff's claims for violation of section 5102 of New York's No-Fault Statute and for breach of contract (*i.e.*, Parts B.1 and 2 of the Discussion section).

In the Order, the Court held, based on its interpretation of the language of section 5102 of New York's No-Fault Statute, that for claims of lost earnings of $2,500 or more, State Farm properly reduced the amount per month of payments of First Party Benefits to $2,000 a month, but was not permitted under the Statute to credit the $500 reduction to the No-Fault coverage limits for Basic Economic Loss.  That issue is one of exceptional importance for New York insurers, as it affects insurers' obligations under No-Fault policies and ongoing industry-wide insurance practices.  Moreover, the Order is in conflict with decisions by New York state courts, including the Third and Fourth Departments of New York's Appellate Division, that have upheld the same practice that this Court has held to be improper, creating uncertainty for insurance companies as to what the law requires of them.

The portion of the Order denying State Farm's motion to dismiss meets all the requirements for interlocutory review.  First, the Order presents a controlling question of law.  Issues of statutory interpretation are pure questions of law, and this Court's interpretation of section 5102 was determinative of the Court's decision to deny dismissal of Plaintiff's claims for violation of section 5102 and for breach of contract based on the purported violation of section 5102.  The question of the interpretation of section 5102 is controlling because a reversal of the Court's ruling on that

issue would eliminate both those claims and terminate the action. *See Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990).

Second, there are substantial grounds for difference of opinion regarding the interpretation of section 5102. As discussed in Point II below, the Third and Fourth Departments of New York's Appellate Division have both rejected claims that are identical to Plaintiff's in all relevant respects, holding that the insurance company defendants were entitled to credit the amount of the same $500 reduction to claims for monthly lost earnings of $2,500 or more toward their obligation to provide coverage for Basic Economic Loss. A 2012 decision by a New York trial court reaches the same result. These decisions are in direct conflict with this Court's decision and the decisions of other New York federal district courts in *Pryce v. Progressive Corp.*, 2019 WL 8163424 (E.D.N.Y. Nov. 15, 2019), and *Lanzillotta v. GEICO Emp. Ins. Co.*, 2020 U.S. Dist. LEXIS 183536 (E.D.N.Y. Sept. 30, 2020).

Third, as shown in Point III below, an immediate appeal from the Order may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b). "Because the district court's efficiency concerns are greatest in large, complex cases, certification may be more freely granted in so-called "big"' cases.'" *Chen-Oster v. Goldman*, 2017 U.S. Dist. LEXIS 106406, at *9-10 (S.D.N.Y. June 14, 2017) (quoting *In re Lloyd's Am. Trust Fund Litig.*, 1997 WL 458739, at *4 (S.D.N.Y. Apr. 12, 1997)). Here, if the result of an interlocutory appeal is favorable to State Farm, this putative class action litigation will end in its entirety, thereby saving the Court and the parties a potentially needless expenditure of significant resources and time in class discovery, class certification motions, class notice, and a class trial. Put simply, "[i]f the Second Circuit were to reverse [this Court's] order on interlocutory appeal, the litigation would be terminated, and the

parties would be spared the expensive and time-consuming process of class certification and discovery." *Kinkead v. Humana, Inc.*, 2016 WL 9453808, at *2 (D. Conn. Oct. 13, 2016) (granting § 1292(b) motion); *accord*, *e.g.*, *Rothstein v. GMAC Mortg., LLC*, 2014 WL 1329132, at *3 (S.D.N.Y. Apr. 3, 2014).

In addition, as shown in Point IV below, § 1292(b) certification is warranted by the exceptional circumstances of this case, including not only the uncertainty created by the divergence between the New York state and federal courts, but also the importance of the competing public concerns embodied in in the No-Fault Statute, which are affected by these divergent decisions. In short, the conflicting interpretations of section 5102 leave New York insurers in urgent need of prompt definitive guidance as to their ongoing obligations to insureds under New York's No-Fault Statute. Accordingly, for these reasons and those set forth below, certification for interlocutory appeal should be granted pursuant to § 1292(b).

## BACKGROUND

Plaintiff Jose Manrique was injured in a car accident while riding as a passenger in a car insured under a State Farm automobile insurance policy, with a Basic Economic Loss limit of $75,000. *See* Class Action Complaint ("Compl.") (ECF No. 6) ¶¶ 13-14.[1] Plaintiff, at the time of the accident, had a monthly wage of $3,424.99. *Id.* ¶ 15.

Under New York's No-Fault Statute, Plaintiff was covered by the driver's policy and applied to State Farm for First Party Benefits. *Id.* ¶ 14. Plaintiff alleges that he was entitled to $75,000, but received only $70,726.98 in First Party Benefits, as a consequence of State Farm's allegedly "improper reduction of Basic Economic Loss by more than the statutorily capped amount

---

[1] The Policy and Endorsement are attached as Exhibits A and B to the declaration of Brian L. Bank dated 8/18/21 (ECF No. 25).

of $2,000 per month for wages." *Id.* ¶ 18.  Plaintiff claims that under Section 5102 of New York's No-Fault Statute, he was entitled to a further payment of $4,273.02 in First Party medical benefits and/or to receive additional First Party Wage benefits. *Id.* ¶ 20.

Section 5102(a) of New York's No-Fault Statute provides for "up to $50,000 in Basic Economic Loss" (§ 5102(a)), with an option for an additional $25,000.  *See* § 5102(a)(5).  Basic Economic Loss consists of items such as medical expenses and lost earnings for work the insured would have performed if not for his injuries. § 5102(a)(1)-(4).  Under section 5102, Basic Economic Loss is not defined as the amount which an insured is entitled to receive.  Rather, the amounts actually paid are determined under section 5102(b), which provides that an insured is entitled to payment of "First Party Benefits," which consist of amounts of Basic Economic Loss less mandatory subtractions specified by the Statute.  The Statute does not set forth a separate limit applicable to First Party Benefits.  Rather, $50,000/$75,000 limits are expressed solely in terms of Basic Economic Loss.

Section 5102(a) defines "Basic Economic Loss" as follows

(a) "Basic economic loss" means, up to fifty thousand dollars per person of the following combined items, subject to the limitations of section five thousand one hundred eight of this article:

(1) All necessary expenses incurred for (i) medical, hospital (including services rendered in compliance with article forty-one of the public health law, whether or not such services are rendered directly by a hospital), surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services; (ii psychiatric, physical therapy (provided that treatment is rendered pursuant to a referral) and occupational therapy and rehabilitation; (iii) any non-medical remedial care and treatment rendered in accordance with a religious method of healing recognized by the laws of this state; and (iv) any other professional health services; all without limitation as to time, provided that within one year after the date of the accident causing the injury it is ascertainable that further expenses may be incurred as a result of the injury.  For the purpose of determining basic economic loss, the expenses incurred under this paragraph shall be in accordance with the limitations of section five thousand one hundred eight of this article.

(2) Loss of earnings from work which the person would have performed had he not been injured, and reasonable and necessary expenses incurred by such person in obtaining services in lieu of those that he would have performed for income, up to two thousand dollars per month for not more than three years from the date of the accident causing the injury.  An employee who is entitled to receive monetary payments, pursuant to statute or contract with the employer, or who receives voluntary monetary benefits paid for by the employer, by reason of the employee's inability to work because of personal injury arising out of the use or operation of a motor vehicle, is not entitled to receive first party benefits for "loss of earnings from work" to the extent that such monetary payments or benefits from the employer do not result in the employee suffering a reduction in income or a reduction in the employee's level of future benefits arising from a subsequent illness or injury.

(3) All other reasonable and necessary expenses incurred, up to twenty-five dollars per day for not more than one year from the date of the accident causing the injury.

(4) "Basic economic loss" shall not include any loss incurred on account of death; subject, however, to the provisions of paragraph four of subsection (a) of section five thousand one hundred three of this article.

(5) "Basic economic loss" shall also include an additional option to purchase, for an additional premium, an additional twenty-five thousand dollars of coverage which the insured or his legal representative may specify will be applied to loss of earnings from work and/or psychiatric, physical or occupational therapy and rehabilitation after the initial fifty thousand dollars of basic economic loss has been exhausted. This optional additional coverage shall be made available and notice with explanation of such coverage shall be provided by an insurer at the first policy renewal after the effective date of this paragraph, or at the time of application.

Section 5102(b) defines "First party benefits," *i.e*., the payment amounts to which a covered person is entitled, as the person's "basic economic loss" minus specified amounts, including twenty percent of the person's lost earnings:

(b) "First party benefits" means payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle, less:

(1) Twenty percent of lost earnings computed pursuant to paragraph two of subsection (a) of this section.

(2) Amounts recovered or recoverable on account of such injury under state or federal laws providing social security disability benefits, or workers' compensation benefits, or disability benefits under article nine of the workers' compensation law, or medicare benefits, other than lifetime reserve days and provided further that the medicare benefits utilized herein do not result in a reduction of such person's medicare benefits for a subsequent illness or injury.

5

(3) Amounts deductible under the applicable insurance policy.

N.Y. Ins. Law § 5102(b).

Section 5102 has been amended a number of times over the years, most recently in 2017. Section 5102(a) monthly maximum on lost earnings, which was originally set at $1,000, was later amended to $2,000, where it now stands. *See* § 5104(a)(2).

## ARGUMENT

"Interlocutory orders that are otherwise non-appealable may be reviewed under [28 U.S.C. § 1292(b)] if the district court is of the opinion that such an order involves a controlling question of law as to which there is a substantial ground for a difference of opinion and that immediate appeal from the order could materially advance the ultimate termination of the litigation." *McDonnell Douglas Fin. Corp. v. Penn Power & Light Co.*, 849 F.2d 761, 764 (2d Cir. 1988) (citing 28 U.S.C. §1292(b)).  Here, that portion of the Court's Order denying State Farm's motion to dismiss meets all three of the elements set forth in § 1292(b) to qualify for interlocutory appeal.

## I.    THE COURT'S ORDER PRESENTS A CONTROLLING QUESTION OF LAW

In denying State Farm's motion to dismiss, this Court held that, under section 5102(a)(2) of New York's No-Fault Law, where an insured claims lost earnings of more than $2,500 a month, an insurer may not attribute more than $2,000 a month in lost earnings to the running total of Basic Economic Loss (either $50,000 or $75,000).  The Court rejected State Farm's contention that the statutory language, as construed by the New York Court of Appeals in *Kurcsics v. Merchants Mutual Insurance Co.*, 49 N.Y.2d 451 (1980), provides that, in such instances, $2,500 should be attributed to Basic Economic Loss, and that, under section 5102(b)(1), the calculation of the amount of lost earnings actually paid out to an insured as First Party Benefits begins with that same $2,500 amount, which is then subject to a reduction of twenty percent.

The Court's ruling involves a controlling question of law.  The Second Circuit has held that "a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer*, 921 F.2d at 24.[2]   Issues of statutory interpretation are questions of law, *see Roberts v. Tishman Speyer Properties*, *L.P.*, 62 A.D.3d 71, 79 (N.Y. 1st Dep't), *aff'd*, 13 N.Y.3d 270 (2009), and, in this case, those questions are controlling.  If the portions of the Order denying State Farm's motion to dismiss (points B(1) and (2) of the Discussion section) are reversed on appeal, such that State Farm was correct in applying $2,500.00 per month towards the policy limit on Basic Economic Loss, the result would be the complete termination of the action.  Plaintiff would have no claim for violation of section 5102, and Plaintiff's claim for breach of contract, which also depends on the asserted violation of the Statute, would also fail as a matter of law.  Accordingly, the interpretation of section 5102 of New York's No-Fault Statute, the central issue in this case, involves a controlling question of law as required for interlocutory review under section 1292(b). *See In re Actos End-Payor Antitrust Litig*., 2020 WL 433710, at *2 (S.D.N.Y. Jan. 28, 2020) (granting § 1292(b) review and finding that the "controlling question of law" factor was met because "if the Court of Appeals were to interpret [the statute] in accordance with the construction advanced by [the defendants], that conclusion would put an end to the instant litigation"), *aff'd sub nom., United Food & Com. Workers Local 1776 v. Takeda Pharm. Co.*, 11 F.4th 118 (2d Cir. 2021).

---

[2] "A question of law can also be controlling if reversal of the district court's order 'could significantly affect the conduct of the action' or if 'the certified issue has precedential value for a large number of cases.'" *Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 389 (S.D.N.Y. 2020) (citation omitted), *aff'd*, 12 F.4th 135 (2d Cir. 2021).

## II.    THERE ARE SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION AS TO THE CONTROLLING QUESTION OF LAW PRESENTED BY THIS CASE

"A substantial ground for difference of opinion exists where '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit.'" *Tantaros*, 465 F. Supp. 3d at 392 (citation omitted); *see also In re Facebook, Inc., IPO Secs. & Derivative Litig.*, 986 F. Supp. 2d 524, 539 (S.D.N.Y. 2014) (where "'there is conflicting authority on the issue,'" there exists a substantial ground for difference of opinion) (citation omitted). In addition, "[t]he standard is met when a party seeking certification shows there is 'genuine doubt as to whether the district court applied the correct legal standard in its order.'" *In re Facebook*, 986 F. Supp. 2d at 540 (citation omitted). The Second Circuit has held that when a controlling question of law meets the standards set forth in § 1292(b) and "'involves a new legal question or is of special consequence, then the district court should not 'should not hesitate to certify an interlocutory appeal.'" *Tantaros*, 465 F. Supp. 3d at 390 (quoting *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013)).

### A.  Conflicting Authority Demonstrates a Substantial Ground for Difference of Opinion on the Controlling Issue of Law in this Case.

The federal and state courts that have ruled on the controlling question of law in this case are lined up on opposing sides of the issue of the interpretation of section 5102, which is determinative of Plaintiff's claim. That controlling question has been directly addressed by three New York federal district courts and by two New York intermediate appellate courts, as well as by New York trial courts.

The New York state courts, addressing the same issue presented in this case and in the same factual circumstances, uniformly hold that an insurance company may credit a $500 offset to its Basic Economic Loss coverage limits in the circumstances here. In *Skubis v. Nationwide Property & Casualty Insurance Co.*, 303 A.D.2d 984 (N.Y. 4th Dep't 2003), and *Marks v.*

*Nationwide Mutual Ins. Co.*, 228 A.D.2d 937 (N.Y. 3d Dep't 1996), the Third and Fourth Departments of New York's Appellate Division both affirmed decisions by the trial courts, holding that, when an insured claims a monthly amount of lost earnings of $2,500 or more, the claim is subject to a 20% "tax reduction" offset under section 5102(b)(1), and the insurance company may credit that $500 amount towards its obligation to compensate the insured for Basic Economic Loss, for a total credit of $2,500.  Both courts relied principally on *Normile v. Allstate Insurance Co.*, 87 A.D.2d 721 (N.Y. 3d Dep't 1982), *aff'd for reasons stated below*, 60 N.Y.2d 1003 (1983).

In *Skubis*, the Fourth Department unanimously affirmed the trial court's order and judgment "for reasons stated in decision at Supreme Court, Erie County, Rath, Jr., J.," 303 A.D.2d 984, 984 (N.Y. 4th Dep't  2003), thus effectually adopting that opinion as its own.  *See Sanchez v. United States*, 696 F.2d 213, 216 (2d Cir. 1982).  As in this case, the plaintiff in *Skubis* "earned more than $2,500 per month," such that "his initial entitlement to lost wage benefits would be the maximum allowable, *i.e.*, $2,000 per month." *Skubis*, Mem. Op. at 4-5 (citing *Kurcsics v. Merchants Mut. Ins. Co.*, 49 N.Y.2d 451 (1980); *Heitner v. Government Empls. Ins. Co.*, 64 N.Y.2d 834 (1984); and *Normile*).[3]  As in this case, "[t]he principal area of dispute between the parties relates to the manner of crediting sums against Defendant's maximum obligation of $50,000 in basic economic loss." *Skubis,* Mem. Op. at 5.  In particular, the parties disputed whether the $500 amount should be applied toward Basic Economic Loss.  *See id.*  Judge Rath held that "[p]ursuant to *Normile* the Court must add the full amount of Defendant's setoffs under section 5102(b) to each monthly payment tendered to Plaintiff, as it determines the remainder of the insurer's obligation for basic economic loss." *Id.*  Thus, for each monthly payment to the insured,

---

[3] Judge Rath's Memorandum Opinion ("Mem. Op.") in *Skubis* is the second item included in Exhibit B to the Declaration of Brian Bank, dated Jan. 31, 2022 (the "1/31/2022 Bank Declaration"), which is submitted contemporaneously herewith.

the defendant insurer "must be credited the twenty percent offset of $500." *Id.* Judge Rath "rejected Plaintiff's claim that only the actual payment of $864 per month can be credited against Defendant's obligation for basic economic loss." *Id.* at 5-6. Here, under the Fourth Department's decision in *Skubis*, State Farm properly treated the $500 reduction to Plaintiff's claim for $2,500 in monthly lost wages as the 20% statutory offset mandated by section 5102(b)(1) and properly applied that amount against its obligation for Basic Economic Loss.

In *Marks*, the Third Department affirmed the trial court's dismissal of a claim identical in all relevant respects to the claim in *Skubis* (and the claim here), holding that "[r]esolution of this matter is governed by this Court's prior decision in *Normile v. Allstate Ins. Co.*" *See* 228 A.D.2d at 937. The record of the case, including the parties' briefs on appeal, demonstrate that the issue in *Marks* was the same as that presented here and in *Skubis*. As here and in *Skubis*, the plaintiff in *Marks* earned over $2,500 a month before his accident. (*Marks*, Appellant's Br. at 1.)[4] The plaintiff claimed that the defendant "incorrectly calculate[d] [his] no-fault basic economic loss under Article 51 of the Insurance Law by deducting from the $50,000.00 maximum no-fault benefits twenty (20%) percent of his lost earnings." *Id.*; *see also* Respondent's Br. at 3 (question presented was: "Is the plaintiff/appellant entitled to bring a cause of action for payment of no-fault benefits representing the statutory reduction of 20% of lost earnings from the $50,000 maximum payment limit?"). The defendant insurer argued that it "properly reduced appellant Irving Mark's no-fault benefits by 20% of his lost earnings," and that "[t]his deduction was correctly taken as a set-off from the $50,000.00 no fault payment ceiling." (Respondent's Br. at 3 (citing *Normile*.) Thus, in affirming the dismissal of the plaintiff's claims, the Third Department, like the Fourth

---

[4] The parties' appellate briefs in *Marks*, cited above, are included as the last two items in Exhibit A to the 1/31/2022 Bank Declaration.

Department, held that the defendant insurer had correctly applied the amount of the $500 reduction for lost earnings claims both to the payment amount and to the insured's Basic Economic Loss limit.[5]

The same issue was again addressed in *Corey v. USAA General Insurance Co.  See Corey*, No. 2011/800111, Decision and Order at 1 (N.Y. Sup. Ct. Aug. 10, 2012).[6]  As the court's discussion of the factual background indicates, the insured in *Corey* claimed lost earnings in excess of $2,500 and was paid $2,000 a month in lost wages by USAA, which took "a credit for the 20% tax reduction factor against the $50,000 cap."  *Id.* at 6.  Like the Third and Fourth Departments in *Skubis* and *Marks*, the court held that the insurer had properly credited the 20% tax reduction offset against the $50,000 cap.  *Id.* at 16-17.  Under *Corey*, as under *Marks* and *Skubis*, Plaintiff's claims here would fail as a matter of law.

In marked contrast, the federal district courts to address this issue, including this Court, have all ruled that where an insured claimed lost earnings of $2,500 (or more) a month, are subject to the statutory $2,000 monthly maximum, the $500 reduction is not credited to the insured's

---

[5] In *Balanca v. GEICO General Insurance Co.*, the Second Department rejected the plaintiff's contention that the 20% reduction could be credited only against the mandatory $50,000 of Basic Economic Loss, and not against the optional additional $25,000 coverage limit (OBEL or Optional Basic Economic Loss).  *See Balanca*, 13 Misc. 3d 90, 92-93 (Appellate Term, N.Y. 2d Dep't 2006).  While it is not clear from the decision whether *Balanca* actually involved monthly lost wages of $2,500 or more, *Balanca* reiterates that the 20% reduction of section 5102(b)(1) applies to persons with lost earnings of $2,500 or more a month.  *See Balanca*, 13 Misc. 3d at 91-92 ("an eligible injured person who has gross lost earnings equal to or greater than $2,500 in a month would, after application of the 20% reduction (*see* Insurance Law §5102(b)), be qualified to receive the full $2,000 monthly payment authorized Insurance Law §5102(a)(2)").  Noting that "[t]he *Normile* case unequivocally held that an insurer's obligation to pay lost earnings as basic economic loss can be satisfied notwithstanding the fact that the actual amount paid will be less than the amount of coverage for available basic economic loss," *id.* at 92, the Second Department agreed with the defendant insurer's contention that "the 20% reduction upon a claim for lost earnings" applied to reduce OBEL coverage, just as it applies to Basic Economic Loss.

[6] The Decision and Order in *Corey* is attached as Exhibit C to the 1/31/2022 Bank Declaration.

$50,000 or $75,000 coverage limit for Basic Economic Loss. *See* Order at 8-9; *Pryce v. Progressive Corp.*, 2019 WL 8163424, at *3 (E.D.N.Y. Nov. 15, 2019); *Lanzillotta v. GEICO Emples. Ins. Co.*, 2020 U.S. Dist. LEXIS 183536, at *12 (E.D.N.Y. Sept. 30, 2020). According to these decisions, the $2,000 maximum applies both to the lost wage benefits actually paid as First Party Benefits and to the Basic Economic Loss coverage provided under the policy, thus precluding the application of the 20% offset prescribed by section 5102(b)(1). Rather, the claimant is regarded as simply receiving the $2,000 maximum, without reference to the 20% offset. *See, e.g.*, Order at 9; *Pryce*, 2019 WL 8163424, at *2 ("In effect, *Kurcsics* limited an insured individual's lost wage benefits to 80% of the individual's claimed lost wages, or the statutory maximum, whichever is lower."); *Lanzillotta*, 2020 U.S. Dist. LEXIS 183536, at *11-12 (similar; following *Pryce*). Under these decisions, *Normile* is not governing authority—it is entirely irrelevant. *See* Order at 11-12; *Pryce*, 2019 WL 8163424, at 2; *Lanzillotta*, 2020 U.S. Dist. LEXIS 183536, at *13.

The conflict between the decisions of this Court and two other New York federal district courts, on the one hand, and the decisions of New York State appellate and trial courts, on the other, demonstrates that there exists substantial ground for difference of opinion, *Davarci v. Uber Technologies, Inc.*, 2021 WL 5326412, at *2 (S.D.N.Y. Nov. 15, 2021); *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013), as well as "genuine doubt" as to whether this Court correctly resolved the legal issue at the heart of Plaintiff's claims in this case. *See In re Facebook, Inc.,* 986 F. Supp. 2d at 540. The substantial nature of this actual difference of opinion on that issue is underscored by the well-established principle recognized by the Second Circuit that, in determining issues of New York law, the New York federal courts are "bound to apply the law as interpreted by a state's intermediate appellate court unless there is persuasive evidence that

the state's highest court would reach a different conclusion." *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010) (following decision of 1st Dep't, N.Y. App. Div.); *see also Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 528 (2d Cir. 2018) (following decision of 4th Dep't, N.Y. App. Div., and stating that New York federal courts are "'bound … to apply the law as interpreted by New York's intermediate appellate courts … unless we find persuasive evidence that the New York Court of Appeals …would reach a different conclusion'") (ellipses in original; citation omitted).[7]

This actual conflict between the New York intermediate appellate courts and trial courts and the New York federal district courts warrants interlocutory review and resolution by the Second Circuit. The need for prompt review is underscored by the fact that any additional lawsuits that may be brought based on Plaintiff's theory in this case are likely to be filed in the federal district courts, given the different outcome in the state courts.

### B. The New York Court of Appeals' Decision in *Kurcsics* Creates Genuine Doubt as to the Correctness of This Court's Decision

State Farm respectfully submits that this Court's analysis and that of the federal district courts in *Pryce* and *Lanzillotta* conflict with the decision by the New York Court of Appeals of Appeals in *Kurcsics v. Merchants Mutual Insurance Co.*, 49 N.Y.2d 451 (1980). While *Kurcsics* did not explicitly address the specific issue here—whether the $500 reduction in lost wages of $2,500 or more is credited to Basic Economic Loss—it addressed both of the key statutory provisions of section 5102 that are relevant to that issue. Its construction of those provisions

---

[7] *See also*, e.g., *Caul v. Petco Animal Supplies, Inc.*, 2021 WL 4407856, at *2 (E.D.N.Y. Sept. 27, 2021) (following decision of 1st Dep't, N.Y. App. Div., because a New York federal court "'is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion.'" (quoting *Muhammad*, 595 F.3d at 432)).

demonstrates the existence of "genuine doubt" as to the correctness of this Court's ruling on the controlling issue of law in this case.

First, the *Kurcsics* Court construed section 5102(a), which defines Basic Economic Loss and its components, including lost earnings. *See* N.Y. Ins. Law § 5102(a). Section 5102(a)(2) defines lost earnings. *See* § 5102(a) ("[l]oss of earnings from work which the person would have performed had he not been injured… up to two thousand dollars per month for not more than three years from the date of the accident causing the injury"). *Kurcsics* held that "[t]he [$2,000] per month limitation embodied in [section 5102(a)(2)] is not part and parcel of the definition of lost earnings" for purposes of Basic Economic Loss, "but, merely, represents the outer limit of *recovery* set down by the Legislature in the no-fault automobile insurance scheme." 49 N.Y.2d at 458 (emphasis added); *see also id.* (the provision for a $2,000 monthly maximum "contemplates *recovery* for loss of earnings up to [$2,000] per month" (emphasis added)). In other words, the $2,000 maximum, despite its placement in subsection (a), is an outer limit on the amount an insured may actually *recover*, *i.e.*, receive in payment as First Party Benefits under subsection (b).

Second, *Kurcsics* made a similar ruling with respect to the meaning of paragraphs 5102(b) and (b)(1), which define First Party Benefits (the amount actually paid to a claimant) and certain subtractions made to Basic Economic Loss in order to calculate the amount of First Party Benefits. Under subsection (b), First Party Benefits mean "payments to reimburse a person for basic economic loss … less" certain amounts, including "[twenty percent of lost earnings computed pursuant to paragraph two of subsection (a)." N.Y. Ins. Law §5102(b) & (b)(1). Consistent with its interpretation of paragraph (a)(2), the *Kurcsics* Court held that the words "lost earnings computed pursuant to paragraph two of subsection (a)" referred not to the whole paragraph (a)(2), but to only so much of the paragraph as defined "lost earnings." *Kurcsics*, 49 N.Y.2d at 458.

14

The *Kurcsics* Court's rationale was that in enacting the $2,000 maximum the legislature intended that it be possible for claimants to receive that amount and that the 20% reduction should not make it impossible across the board for any claimant to recover First Party Benefits reflecting lost earnings in the maximum amount of $2,000. Thus, despite the fact that the $2,000 maximum is found in paragraph (a)(2), the Court rejected the then current practice of insurers and the then current insurance regulations, pursuant to which insurers applied the $2000 maximum to the amount of lost earnings for Basic Economic Loss, such that the calculation of First Party Benefits for high earners began with $2,000, and the 20% reduction resulted in a payment for First Party Benefits that included no more than $1,600 in lost earnings.

The two provisions interpreted by the New York Court of Appeals are separate provisions in different paragraphs and apply separately. On its face, the statutory mandate of paragraph (b)(1) is clear: the overall amount of First Party Benefits is lowered by 20% of lost earnings as computed according to paragraph (a)(2). *See* § 5102(b)(1). If the result is an amount over $2,000, the amount would be further reduced to the $2,000 maximum. Nothing in *Kurcsics* or in the statutory language suggests that, if the $2,000 maximum is applicable, it displaces the 20% "tax reduction" or is an "alternative" to it, such that the Statute calls for First Party Benefits in the amount of 80% of the lost earnings or $2,000, whichever is lower, as held by *Pryce* and *Lanzillotta* and by this Court. That holding does not interpret the Statute—it rewrites it so as to nullify the statutory 20% tax reduction offset when the claimant has lost earnings of $2,500 or more.

In sum, the language of the No-Fault Statute and the *Kurcsics* Court's analysis of that language raise genuine doubt regarding the correctness of the decisions of this Court and the courts in *Pryce* and *Lanzillotta*, further underscoring the substantial nature of the grounds for difference of opinion.

### III.    IMMEDIATE APPEAL COULD MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THIS LITIGATION

Plaintiff has erroneously argued that certification should be denied because "an *affirmance* of this Court's Order would … not 'materially advance the ultimate termination of this litigation.'" Pl. 1/7/22 Letter at 2 n.1 (ECF No. 33) (Plaintiff's emphasis).  The relevant question is whether *reversal* of this Court's Order would end this case, thus materially advancing its termination.  *See Tantaros*, 465 F. Supp. 3d at 392 (granting § 1292(b) certification where "[r]eversal of this Court's Opinion & Order would end this case and would materially advance the ultimate termination of the litigation.").

Here, immediate appeal from the Order may materially advance the ultimate termination of the litigation.  As noted above, if that portion of the Order denying State Farm's motion to dismiss is reversed on appeal, then this putative class action would be concluded. Where "the grounds for dismissing pleadings can be restated as a broader legal question that is likely to be dispositive of the case at hand, certification of an interlocutory appeal may be appropriate." *Vidal v. Nielsen*, 2018 WL 10127043, at *3 (E.D.N.Y. Apr. 30, 2018) (certifying under § 1292(b) for interlocutory appeal an order denying in part and granting in part motions to dismiss for failure to state a claim).

Moreover, the discovery, motion practice, and trial with respect to this putative class action will require substantial time, effort, and resources of the parties and the Court, and prudence requires an appeal of this issue *before* engaging in what ultimately may prove for naught in the case of an appellate reversal of the Order. *See*, *e.g.*, *Rothstein v. GMAC Mortg., LLC*, 2014 WL 1329132, at *3 (S.D.N.Y. Apr. 3, 2014) (certifying pursuant to § 1292(b) court's order, which denied in part defendant's motion to dismiss class action complaint, because "reversal on the issue sought to be appealed would result in dismissal of this litigation" and "some of this protracted

16

litigation might be avoided by an immediate appeal"). Here, the purely legal issue of the interpretation of section 5102 of New York's No-Fault Statute that is addressed in this Court's Order is central to the case. Immediate appellate review to resolve this issue would materially advance the termination of this litigation if the result is favorable to State Farm and, in any event, would provide guidance for the further conduct of the litigation of this action.

Furthermore, the fact that this litigation is still in an early stage favors certification for interlocutory appeal. In a putative class action like this case, a substantial waste of time and resources may be avoided through a § 1292(b) appeal if it is determined that the Plaintiff's remaining claims are legally unsound, *before* class certification proceedings and *before* the parties incur the expense of issuing class notice, merits-related discovery on a classwide-basis, and a class trial. *See*, *e.g.*, *Jones v. Midland Funding, LLC*, 2012 WL 1204716, at *5 (D. Conn. Apr. 11, 2012) (certifying § 1292(b) appeal because, if the district court's order is reversed, "class action proceedings will be unnecessary and judgment will enter in the defendant's favor, saving both sides of this case significant time and expense"); *Kinkead*, 2016 WL 9453808, at *2 (granting § 1292(b) motion because, if the district court's order is reversed "on interlocutory appeal, the litigation would be terminated, and the parties would be spared the expensive and time-consuming process of class certification and discovery"); *Rothstein*, 2014 WL 1329132, at *3 ("Because some of this protracted [class action] litigation might be avoided by an immediate appeal, the Court finds that the third prong of § 1292(b) has been met and certifies the … [Court's] Order for interlocutory appeal").

Here, if on an interlocutory appeal the Court of Appeals were to reverse this Court's rulings, State Farm's "motion[] to dismiss would be granted, and the litigation would end." *In re Actos End-Payor Antitrust Litig.*, 2020 WL 433710, at *3. "[S]uch an outcome would thus 'avoid

the significant expense and burdens attendant to this type of complex, class action litigation.'" *Id.* (citation omitted). "Moreover, any 'risk of short-term delay' of the resolution of this case by certifying an interlocutory appeal is 'outweighed by the potential advantage of materially advancing the *ultimate termination* of the litigation.'" *Id.* (quoting *In re Trace Int'l Holdings, Inc.*, 2009 WL 3398515, at *3 (S.D.N.Y. Oct. 21, 2009)). Accordingly, certification is an appropriate use of judicial resources to materially advance this litigation.

## IV.   THE EXCEPTIONAL CIRCUMSTANCES OF THIS CASE WARRANT INTERLOCUTORY REVIEW

The exceptional circumstances of this case also demonstrate that § 1292(b) certification is appropriate. First, there are three cases now pending in New York federal district courts asserting identical claims against three different insurers—this case, *Pryce*, and *Lanzillotta*. As the Court is aware, State Farm believes that—like this case—*Pryce* and *Lanzillotta* were wrongly decided. Motions were made for § 1292(b) certification in those cases and denied. These three cases will consume considerable time and resources, both for the courts and for the parties. None of these cases appears to be close to a final judgment, and appeal as of right is not on the horizon. In addition, we are aware of no pending state court cases that are likely to result in further New York appellate decisions in the near future. Until the legal issues of statutory interpretation presented by these three cases are resolved on appeal, insurers will be left without definitive guidance as to their ongoing obligations to insureds under New York's No- Fault Statute. Courts have recognized that interlocutory review is appropriate when "[r]esolution of the[] arguments will have far-reaching implications" for an entire industry. *See, e.g.*, *Capitol Records*, 972 F. Supp. 2d at 551-54 (granting § 1292(b) review and noting "important implications of the case" for industry members); *United States ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 265, 278 (E.D.N.Y. 2021) (granting § 1292(b) review where "the outcome of this case

has broad-reaching ramifications for healthcare facilities"); *In re Actos,* 2020 WL 433710, at *2 (granting § 1292(b) review when the issue "may have important ramifications for other companies in the pharmaceutical industry").

Second, these cases present issues of considerable importance involving competing New York public policy concerns. As the legislative history of the No-Fault Act shows, the Act was intended to lower insurance premiums and keep cases out of the courts, while giving a measure of immediate recovery for an injured claimant. *See Kurcsics*, 49 N.Y.2d at 457. This Court's decision and the decisions by the courts in *Pryce* and *Lanzillotta* affect the New York Legislature's balancing of these various goals. The issues in this case impact not only the parties in this case and *Pryce* and *Lanzillotta*, but will also affect insureds and insurers throughout the State of New York. Moreover, the division between the New York state courts on one hand and the federal district courts on the other constitutes a further exceptional circumstance that warrants a prompt resolution of the issue by the Second Circuit. At this point, as noted above, claims such as those brought in the federal district courts in this case and in *Pryce* and *Lanzillotta* are unlikely to be brought in the New York state courts, which have rejected such claims. Accordingly, considerations of comity also support certification of the Court's Order for interlocutory review. These combined considerations establish exceptional circumstances and warrant § 1292(b) certification for interlocutory appeal.

## CONCLUSION

For all the foregoing reasons, State Farm respectfully submits that the Court should grant State Farm's instant motion and amend Court's December 2, 2021, Order (ECF No. 28), denying in part and granting in part State Farm's motion to dismiss, so as to certify the portion of that Order denying State Farm's motion to dismiss (*i.e.*, Parts B.1 and 2 of the Discussion section) as appropriate for immediate interlocutory appeal, pursuant to 28 U.S.C. § 1292(b).

Dated:  January 31, 2021
New York, New York

Respectfully submitted,

**DECHERT LLP**

/s/ *Douglas W. Dunham*
Douglas W. Dunham
Ellen P. Quackenbos
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 698-3500
Facsimile:  (212) 698-3599
douglas.dunham@dechert.com

-and-

**RIVKIN RADLER LLP**

/s/ Brian L. Bank
Evan H. Krinick
Brian L. Bank
926 RXR Plaza
Uniondale, New York 11556
Telephone:     (516) 357-3000
Facsimile:     (516) 357-3333
brian.bank@rivkin.com

*Attorneys for Defendant State Farm Mutual
Automobile Insurance Company*